IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE ABRAMS, on behalf of herself and all others similarly situated, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 01 C 7538 |
| | ) |
| VAN KAMPEN FUNDS, INC., VAN KAMPEN INVESTMENT ADVISORY CORPORATION, VAN KAMPEN PRIME RATE INCOME TRUST, RICHARD F. POWERS, III, STEPHEN L. BOYD, and DENNIS J. McDONNELL, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This is a consolidated class action alleging federal

securities violations involving defendant Van Kampen Prime Rate

Income Trust's (the "Fund") valuation of senior loans and is

subject to the Private Securities Litigation Reform Act of 1995

("PSLRA"), 15 U.S.C. § 77z-1. A class has been certified

consisting of all persons who purchased shares in the Fund

between September 30, 1998 and March 26, 2001, inclusive, with

defendants and certain related parties excluded from the class.

See Abrams v. Van Kampen Funds, Inc., 2002 WL 1989401 (N.D. Ill.

Aug. 27, 2002) ("Abrams II"). Named as defendants are the Fund;

Van Kampen Funds, Inc., the Fund's administrator; Van Kampen Investment Advisory Corp., (the "Adviser"), the Fund's investment adviser; and four individuals who were officers and trustees of the Fund. Claims that remain pending are for violations of § 11 of the Securities Act, 15 U.S.C. § 77k, and for control person liability under § 15 of the Securities Act, 15 U.S.C. § 77o, based on the alleged § 11 violations. Other claims and defendants have previously been dismissed. See Order dated Dec. 8, 2004 (Docket Entry [161]); Abrams v. Van Kampen Funds, Inc., 2004 WL 1433620 *1 n.1, *9 n.3 (N.D. Ill. June 25, 2004) ("Abrams III").

After the case was ready for trial, the parties entered into a Stipulation of Settlement (the "Settlement Agreement") resolving all claims. The Settlement Agreement was preliminarily approved, notice was provided to members of the class, an opportunity was provided to submit written and oral objections, and a fairness hearing was held on November 16, 2005. See Order dated June 3, 2005 (Docket Entries [193], [194]).[1] The case is ripe for a ruling on whether the parties' proposed settlement

---

[1]Although 28 U.S.C. § 1715 is not applicable to this case, the court followed a practice suggested by that statute, providing the Securities and Exchange Commission ("SEC") with the opportunity to comment on the Settlement Agreement. See Order dated Nov. 2, 2005 (Docket Entry [202]). The SEC informed plaintiffs' counsel that it typically does not comment on settlements of private litigation. See Nov. 4, 2005 Letter from SEC Midwest Regional Director (Docket Entry [208]). No comments from the SEC have been submitted.

should be approved. Also pending are a motion to provide a compensatory award to the lead plaintiffs and a petition for the award of attorney fees and the reimbursement of expenses.

Before the Settlement Agreement can be approved, this "court must determine that [the] class action settlement is fair, adequate, and reasonable, and not a product of collusion." Reynolds v. Beneficial National Bank, 288 F.3d 277, 279 (7th Cir. 2002) (quoting Joel A. v. Guiliani, 218 F.3d 132, 138 (2d Cir. 2000)). This court must act in a fiduciary-like capacity for the class, carefully scrutinizing the Settlement Agreement to make sure that class counsel have properly exercised the fiduciary duties they owe to the class. Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781, 785 (7th Cir. 2004); Reynolds, 288 F.3d at 279-80. Factors that may be considered in determining whether a class settlement is fair, adequate, and reasonable include: (a) the strength of plaintiffs' case compared to the amount of the settlement; (b) defendants' ability to pay; (c) the likely complexity, length, and expense of further litigation; (d) opposition to the settlement from members of the class; (e) any indications of collusion; (f) the opinions of counsel; (g) the stage of the proceeding and the amount of discovery completed at the time of settlement; and (h) the public interest. See Isby v. Bayh, 75 F.3d 1191, 1199 (7th Cir. 1996); Mirfasihi v. Fleet Mortgage Corp., 2005 WL 1950386 *4 (N.D. Ill.

- 3 -

Aug. 11, 2005); American Civil Liberties Union of Ill. v. United
States General Services Administration, 235 F. Supp. 2d 816, 818
(N.D. Ill. 2002); Great Neck Capital Appreciation Investment
Partnership, L.P. v. PricewaterhouseCoopers, L.L.P., 212 F.R.D.
400, 409 (E.D. Wis. 2002).

Previously the parties provided extensive briefs and
factual presentations on summary judgment. The motions in limine
also involved the consideration of extensive factual contentions,
particularly regarding damages and potential expert testimony.
Thus, this court has substantial knowledge of the potential
factual issues in this case. While the court made no final
determination as to the merits of the case, the court is well
aware that each side faced risks if the case went to trial.
Plaintiffs did not have a clear case supporting liability, but
still had a significant chance of success. Even if successful
in obtaining a jury finding of liability, issues remained
regarding damages. Plaintiffs were unlikely to have succeeded
in obtaining the amount of damages that was asserted. While
one of plaintiffs' experts has opined that damages were between
$220,207,492 and $271,370,812, plaintiffs were unlikely to have
been successful in obtaining such damages at trial, which are
based on no adjustments for other possible factors affecting the
net asset value ("NAV") of the Fund. Defendants' experts opined
that numerous other factors affected the NAV. Even taking

- 4 -

plaintiffs' proposed pricing methodology, defendants' experts calculated a maximum loss of $44,600,000. If successful in proving liability, plaintiffs may have obtained more than that amount or possibly less. Taking into consideration that, by going to trial, plaintiffs did not have a 100% chance of proving liability and may even had had a less than 50% chance of proving liability, the gross settlement amount of $31,500,000 appears to be fair.

It is also considered that the parties engaged in substantial attempts at settlement before finally agreeing to the terms of the Settlement Agreement. Initially, the parties attempted private mediation before a retired judge. That attempt at settlement was unsuccessful. After this court ruled on the motions in limine, the case was referred to a magistrate judge to supervise settlement discussions. The dollar figure that was ultimately agreed upon was the amount recommended by the magistrate judge, a number that neither side had previously indicated a willingness to accept. Since the parties had previously indicated a reluctance to settle and the amount settled upon was based on the recommendation of a neutral third party, the circumstances of the settlement support that there was no collusion between the parties.

It is also taken into consideration that the settlement is being recommended by experienced plaintiff securities

litigators. Additionally, class counsel represent that they have taken into consideration a trial that they conducted before a panel of 30 mock jurors. While counsel has not disclosed the results of the mock trial nor the comments of any of the jurors, this is further indication that counsel's decision to recommend the settlement was based on a thorough consideration of the risks of litigation.

Although the number of class members is large (more than 250,000) and likely involves a number of sophisticated investors, class members have presented only a few objections to the Settlement Agreement. Only four objections were received, two of which were essentially identical objections from apparently related persons. Michael Laffey and Sharla Laffey (as the apparent representative of her mother's estate) conclusorily object that they would settle for no less than $10,000.00. They do not present any basis for this calculation. As class counsel points out, the Laffeys' total investments during the class period were less than $2,000.00 so their damages are unlikely to be a total of $20,000.00.

Isadore Kopstein objects that he and others should receive damages representing a 10% annual return on their Fund investments for the time held. He alleges that a Van Kampen representative who promoted the investment had represented to him and others that the return on the investment would be 10%.

- 6 -

Kopstein represents that he previously complained about this to Van Kampen and that he settled this claim by agreeing to the full return of the amount invested. The present lawsuit does not involve this type of claim. The present lawsuit only concerns overvaluation of the Fund's NAV, not any alleged fraudulent representations as to investment returns that were made when marketing investments in the Fund. Any dividends that were received during the class period are unrelated to the damages that could be recovered in this lawsuit. Moreover, Kopstein has already received a full return of the amount he invested and indicates he already signed a release for the claims he raises in his objections. Kopstein's objections regarding the 10% return are not relevant to the fairness of the Settlement Agreement in this case. Kopstein also generally objects that the attorney fee and expense request is too high. Fees and expenses are separately discussed below.

David Waddell's objection pertains only to attorney fees. He proposes a method of determining attorney compensation that is inconsistent with controlling case law. By analogizing to compensation under certain federal contracts, he contends that attorney compensation in this case should be determined by the number of attorneys working on the case. The annual compensation for each attorney should not exceed the annual compensation for a federal district judge. After determining the total of such

compensation, 15% should be added for a profit margin. The
suggestion is declined. Existing case law will be followed.

The Plan of Allocation allocates the settlement proceeds
among the class members.

> 1. For shares of the Fund that were
> purchased during the Class Period and still held
> as of the end of the Class Period, the Recognized
> Loss per share is equal to the alleged
> overpricing if any, on the day of purchase.
>
> 2. For shares of the Fund that were
> purchased during the Class Period and sold before
> the end of the Class Period, the Recognized Loss
> per share is equal to the alleged overpricing, if
> any, on the day of purchase less the alleged
> overpricing, if any, on the day of sale.

Each class member who submits a claim will share in the available
proceeds (the settlement proceeds less fees and expenses, plus
any accumulated interest) based on the proportion of the
individual member's Recognized Loss to the Recognized Loss of all
class members who submit a claim. This is a fair and equitable
manner of distributing the proceeds. It is approved.

Since the Settlement Agreement, including the monetary
proceeds, appears to be fair, reasonable, and adequate, and does
not appear to be the result of any collusion, the Settlement
Agreement will be approved.

Each of the two lead plaintiffs requests a compensatory
award of $9,375.00 representing approximately 75 hours of time
spent on the case compensated at $125.00 per hour. However, the

PSLRA provides that: "The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class." 15 U.S.C. § 77z-1(a)(4). That statute also provides: "Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Id. Lead plaintiffs do not contend that any portion of the requested amount represents any actual expenses that either has incurred. They do not claim that they missed any work or other earning opportunity in order to participate in the litigation. Under the PSLRA, lead plaintiffs cannot be awarded additional compensation. The request for a compensatory award will be denied.

Consistent with the notice sent to the class, class counsel have requested a fee award equal to 30% of the Settlement Fund. They also request reimbursement for $2,371,683.79 in expenses, which is less than the maximum amount stated in the notice to the class. Expenses will be considered first.

$1,443,860.80 of the expenses represents expenses of Complete Claim Solutions, Inc. ("CCS"), the Claims Administrator. These expenses relate to sending out notices of the pendency of the class action as well as notice of the proposed settlement,

which involved sending a total of approximately 743,000 notices.
It also includes expenses for processing responses, including
claim forms, maintaining a telephone service for questions from
class members, and administrating the distribution of the
Settlement Fund proceeds. As of October 12, 2005, CCS had
accrued and invoiced $801,412.36 in expenses, of which $82,551.55
had been paid by defendants, for a remaining amount of
$718,860.81. CCS estimates remaining expenses to process claims
will be $650,000 to $725,000. Class counsel have used the upper
end to estimate remaining expenses of the Claims Administrator.
At this time, the lower end of the estimate will be allowed
provided documentation for such expense is provided to class
counsel. To the extent greater actual expenses are incurred
prior to a final disbursement of funds, class counsel may move
for a modification of the amount of expense reimbursement. The
court approves expenses for the Claims Administrator of up to
$1,368,860.81. To the extent actual expenses for the Claims
Administrator turn out to be less than this amount, the excess is
to remain part of the Net Settlement Fund to be disbursed in
accordance with the terms of the Plan of Allocation and the
Settlement Agreement, including § 5.4(g) of the Settlement
Agreement.

The remaining expenses that are requested are categorized

as follows:

| | |
|---|---:|
| Expert Fees | $428,773.02 |
| Photocopying | 152,362.88 |
| Investigators/Trial Consultants | 102,074.10 |
| Travel/Transportation/Meals | 130,106.86 |
| Mediation Services | 16,185.02 |
| Court Reporting Services | 38,207.03 |
| Mailing/Delivery Expenses | 14,522.22 |
| Phone/Fax | 20,584.22 |
| Legal/Factual Research | 14,925.07 |
| Court Costs/Service Fees | 8,972.57 |
| Class Member Search Fees to Brokers | 1,110.00 |
| Total | $927,822.99 |

Other than also breaking down these expenses as incurred
by each law firm involved in this case, no details are provided
regarding these expenses. No actual invoices are provided, only
an affidavit from a person at each law firm stating the total for
each category. That will not suffice for most of the stated
expenses.

The court will not approve $428,773.02 in expert expenses
without invoices or statements from the experts showing the
amounts were paid, the types of services, the number of hours
worked, and the hourly rates charged.

The court will not approve the photocopying expenses,
which apparently includes much in-house photocopying, without
seeing the cost per page charged for in-house photocopying,
sufficient billing records to establish the expenses were only
for this case, and any invoices from outside copying services for
larger jobs. Cf. Doing Steel, Inc. v. Castle Construction Corp.,

2005 WL 563098 *3 (N.D. Ill. March 3, 2005). In-house
photocopying will not be reimbursed at a higher rate than an
outside copying service would charge, usually not more than five
to ten cents per page. See Sisto v. Ameritech Sickness &
Accident Disability Benefit Plan, 2004 WL 816774 *4 (N.D. Ill.
March 15, 2004); Petit v. City of Chicago, 2003 WL 22339277 *5
(N.D. Ill. Oct. 10, 2003).

No reimbursement will be allowed for investigators and
trial consultants without some description of the nature of the
work performed, the hours worked, and the hourly rate.

More than $130,000 for travel, transportation, and meals
will not be allowed without some information about this expense.
It needs to be shown that these expenses were reasonable. Also,
during this litigation, multiple attorneys were often
unnecessarily sent to court hearings. Absent special
circumstances, the court will not allow travel expenses for
sending more than two plaintiff attorneys to any court hearing.
At this time none of the travel expenses will be reimbursed.

It will be accepted that the mediation services
($16,185.02), court reporting services ($38,207.03),
mailing/delivery ($14,522.22), phone/fax ($20,584.22), and class
member search ($1,110.00) expenses were all for this case and
reasonable. Reimbursement of those expenses will be permitted.

Presumably, the category labeled as "Legal/Factual
Research" primarily (or exclusively) refers to computer-assisted
legal research such as Westlaw and Lexis. That is not considered
to be a cost or expense, but instead is considered part of
attorney fees and is not separately awarded when the percentage-
of-recovery method is used for calculating legal fees.
Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 409-10 (7th Cir.
2000) ("Montgomery II"), cert. denied, 532 U.S. 1038 (2001).
None of these expenses will be reimbursed unless class counsel
shows that they represent expenses other than computer-assisted
legal research.

$8,972.57 for court costs and service fees appears high.
Without further explanation, none of these expenses will be
reimbursed other than the $150.00 filing fee that apparently was
paid by counsel.

At this time, reimbursement of expenses in the amount of
$1,459,619.30 will be permitted. To the extent class counsel
desires to submit additional documentation or otherwise seek
reconsideration of the denial of certain expenses, they must so
move within ten court days of the entry of today's order or the
court will not consider such a request.

Under the terms of the Settlement Agreement, defendants
have already paid the Settlement Fund which is being held in
escrow and is accumulating interest. Class counsel's

reimbursement of expenses shall include a proportional share of interest. The fees that are awarded based on the percentage method will also include a proportional share of the interest that has and continues to accumulate in the escrow account.

The fee award in this case will be based on the percentage method. Class counsel request that the percentage be based on the gross recovery, before any reduction for taxes or expenses. The actual recovery to the class, however, is the net amount after expenses. Therefore, it is more appropriate to base attorney fees on the class's net recovery. This bench has applied that methodology in the past and it has been upheld by the Seventh Circuit as being within the court's discretion. <u>See</u> <u>Montgomery v. Aetna Plywood, Inc.</u>, 1999 WL 172313 (N.D. Ill. March 18, 1999) ("<u>Montgomery I</u>"), <u>aff'd in part, rev'd in part on other grounds</u>, <u>Montgomery II</u>, 231 F.3d at 408. Additionally, applying the percentage to the net recovery is consistent with the emphasis in the PSLRA that fees be based on damages and interest <u>actually</u> recovered by the class. <u>See</u> 15 U.S.C. § 77z-1(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").[2] The fee

[2]The Ninth Circuit has construed the identical provision found at 15 U.S.C. § 78u-4(a)(6) as not requiring that attorney fees in a PSLRA case be based on a percentage of net recovery,

award will be based on a percentage of the class's net recovery after the payment of expenses and any taxes.

Class counsel request a fee award based on 30% of the settlement. "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Taubenfeld v. Aon Corp., 415 F.3d 597, 599 (7th Cir. 2005) (quoting In re Synthroid Marketing Litigation, 264 F.3d 712, 718 (7th Cir. 2001)). In making such a determination, the court can consider fees awarded in other cases, the quality of legal services rendered, and the risk of nonrecovery when the case is taken on a contingent basis. Taubenfeld, 415 F.3d at 600. In determining the appropriateness of a percentage, a comparison may be made to the estimated lodestar recovery. Montgomery I, 1999 WL 172313 at *4.

For purposes of comparison, class counsel only cite cases in which the percentage fee award was 30% or more. They make no attempt to show that these cases are representative and do not give any consideration to the size of the recoveries upon which these percentages were applied. Newberg states that the normal

---

but permitting fees to be based on any method (including percentage of net or gross recovery) "so long as the net result is reasonable." Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).

- 15 -

range of fees in common-fund securities and antitrust litigation is 20 to 33 percent.  4 Newberg on Class Actions § 14:6 (4th ed. updated Nov. 2005).  This bench has previously found that 25% is the median fee award in cases involving recoveries of $5-15 million.  Montgomery I, 1999 WL 172313.  The present case is in a somewhat higher category, with the gross recovery being $31,500,000.  However, this court is basing the award on the net recovery, not the gross recovery.  Since class counsel provides no compelling data to the contrary, 25% of the net recovery will be considered the median fee award in the present type of case. The court will award fees based on that percentage unless the specific circumstances of this case call for a higher or lower award.

There is no doubt that the attorneys representing the class are competent and well-qualified attorneys.  The court has already found that the dollar amount of the settlement is fair and reasonable.  The court, however, does not find that the amount of the recovery is so high that it should be considered an exceptional award that justifies a higher fee percentage.  As previously discussed, there were various damages estimates in this case.  None support that the amount actually received in settlement was exceptional.  The actual recovery to the class

will be somewhat less than 1% of the value of their investments.[3] The size of the settlement does not represent an exceptional recovery justifying a higher percentage.

There was some risk in this case that there would be no recovery. The case certainly was not a slam dunk in plaintiffs' favor. However, neither was it a slam dunk in defendants' favor. Given defendants' risk of incurring substantially greater damages had plaintiff proven liability, it is not surprising that defendants agreed to settle this case. Thus, although success at trial was not assured, this was not a case in which recovery through a settlement was unexpected. The exact degree of risk cannot be estimated, but this does not seem to be a case in which the risk of no recovery was greater than in the average securities case. The fee percentage will not be increased based on this case involving greater risk than the ordinary case.

The amount of attorney time expended on a case may be taken into consideration, with those cases settling earlier in the litigation process entitled to a lower recovery than those cases that settle late in the process. Montgomery I, 1999 WL 172313 at *4. It is common that securities litigation does not settle until after the completion of discovery and rulings on summary judgment motions and that the case also involves briefing

---

[3]The net recovery will be approximately $.09 per share for shares that were valued around $10.00 during the pertinent time period.

- 17 -

motions to dismiss and discovery disputes. Here the parties completed the final pretrial order before a settlement was finally reached. The case did not actually go to trial. This case does not involve an excessive amount of attorney time that would justify a higher award. A comparison to the estimated lodestar supports that conclusion.

Class counsel apparently do not disagree with the conclusion that this case does not justify an above-average fee award. They point to the quality of services, risk involved, and amount of work performed as supporting a fee based on 30% of the gross recovery (instead of 25% of the net recovery), but that is because they view 30-33% as the norm, instead of 25%.

In this case a 25% fee would be approximately $7,510,095.18.[4] Class counsel contend the lodestar for this case is $6,596,385.50. It is highly doubtful that detailed scrutiny of that lodestar would not result in a substantial reduction. Class counsel has provided a list of each attorney's and paralegal's total hours and the rates charged, which is sufficient for present purposes of a rough estimate. As previously stated, court appearances were often overstaffed,

___

[4]This number is 25% of $31,500,000 less $1,459,629.30 of expenses. It does not take into account any interest earned on the Settlement Fund. To the extent class counsel successfully proves additional expenses or there are additional expenses of the Claims Administrator, the fee recovery would decrease, but not substantially.

which may mean other work was also overstaffed. There would
likely be a significant, if not substantial, reduction in the
number of hours properly charged. The hourly rates upon which
the lodestar is based are high. Rates for partners and outside
counsel range from $425.00 to $600.00 per hour. Rates for
associates range from $220.00 to $450.00 per hour. Rates for
paralegals range from $130.00 to $220.00 per hour. Not only are
these rates high, but approximately two-thirds of the time billed
was by partners and the one associate who billed at $450.00 per
hour. Such top-heavy staffing is not appropriate. A more
reasonable lodestar is estimated to be $4,000,000.00 or less.
Assuming a lodestar of $4,000,000.00, a fee award of
$7,510,095.18 would represent a multiplier of 1.88. As a rough
comparison, that would be within the high end of the reasonable
range for a multiplier.

Class counsel will be awarded fees in the amount of 25%
of the class's net recovery.

Class counsel has submitted to chambers, but has not
filed in the court record, a list of those who opted out of the
class. Within 7 days, class counsel shall file with the Clerk of
the Court a list of the opt-outs. The requests to opt out are
approved.

IT IS THEREFORE ORDERED that the settlement reached with
the defendants in this case is found to be fair, adequate, and

reasonable and is approved.  The Plan of Allocation is also
approved.  Lead plaintiffs' motion for a compensatory award [206]
is denied.  Lead counsel's application for fees and reimbursement
of expenses [198] is granted in part and denied in part.
Plaintiffs' cause of action is dismissed with prejudice.  The
Claims Administrator shall distribute from the Settlement Fund
reimbursement of expenses up to $1,459,619.30 plus proportionate
interest.  From the Settlement Fund, the Class Administrator
shall pay to Class Counsel attorney fees representing 25% of the
Class's net recovery, that is 25% of the Settlement Fund plus
interest, less taxes and expenses.  The Clerk of the Court is
directed to enter judgment dismissing plaintiffs' cause of action
with prejudice.  This court retains jurisdiction to enforce the
terms of the settlement, to resolve any disputes regarding
distribution of the settlement proceeds, and to determine the
distribution of any unclaimed settlement proceeds.  A status
hearing is set for May 24, 2006 at 11:00 a.m.

                              ENTER:


                                   William T. Hart
                                   UNITED STATES DISTRICT JUDGE


DATED:   JANUARY 18   , 2006