IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRENE ABRAMS, on behalf of  )
herself and all others  )
similarly situated,  )
　)
　　　　　Plaintiffs,  )
　)
　　v.  )　No. 01 C 7538
　)
VAN KAMPEN FUNDS, INC.,  )
VAN KAMPEN INVESTMENT ADVISORY  )
CORPORATION, VAN KAMPEN PRIME  )
RATE INCOME TRUST, RICHARD F.  )
POWERS, III, STEPHEN L. BOYD, and  )
DENNIS J. McDONNELL,  )
　)
　　　　　Defendants.  )

## MEMORANDUM OPINION AND ORDER

This is a class action subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1. Recently, a class settlement was approved as fair, Lead Counsel were awarded fees representing 25% of the net settlement fund, and Lead Counsel were awarded reimbursement of certain expenses. See Abrams v. Van Kampen Funds, Inc., 2006 WL 163023 (N.D. Ill. Jan. 18, 2006) ("Abrams V"). On January 20, 2006, a judgment was entered dismissing plaintiffs' cause of action with prejudice. This court retains jurisdiction to enforce the terms of the

settlement, to resolve any disputes regarding distribution of the settlement proceeds, and to determine the distribution of any unclaimed settlement proceeds. In <u>Abrams V</u>, the court denied certain aspects of Lead Counsel's reimbursement request based on inadequate documentation. It was expressly stated that the court would reconsider that ruling if Lead Counsel submitted additional documentation within ten days of the entry of the order. See <u>id.</u> at *5-6. Ten days thereafter, Lead Counsel filed a supplemental memorandum in support of reimbursement of certain categories of expenses. That pleading is construed as a motion for reconsideration. For the following reasons, the motion is granted in part and denied in part.

Lead Counsel presently seek reimbursement for $427,741.44 in expert fees. Ordinarily, when the fees awarded to counsel in a common fund case are based on the percentage-of-recovery method as in this case, counsel are separately entitled to reimbursement for expert fees incurred on behalf of the class. <u>In re KeySpan Corp. Securities Litigation</u>, 2005 WL 3093399 *18-19 (E.D.N.Y. Sept. 30, 2005). As with any expense, however, counsel are only entitled to be reimbursed for expert fees to the extent the fees were reasonable. <u>Id.</u> The burden is on Lead Counsel to show that the fees charged and paid were reasonable and not duplicative. See <u>Royal Maccabees Life Insurance Co. v. Malachinski</u>, 2001 WL

290308 *17 (N.D. Ill. March 20, 2001); New York v. Solvent Chemical Co., 210 F.R.D. 462, 468 (W.D.N.Y. 2002).

There are two problems with the reimbursement request for expert fees. The first is that some of the fees that Lead Counsel has labeled as expert fees are actually payments for work more properly characterized as work that should be charged as attorney fees. That is an important distinction because the entire attorney fee award is being awarded as a percentage of the class recovery. Thus, no additional expense reimbursement is permitted for items properly characterized as an aspect of attorney fees. See Abrams V, 2006 WL 163023 at *6 (expenses for computer-assisted legal research are part of attorney fees that is not separately awarded as an expense). Lead Counsel seek reimbursement for fees paid to Joel Seligman, the then-dean of the Washington University School of Law whom Lead Counsel describe as "among the nation's foremost experts on securities law." An expert on the law is an attorney. Had this case gone to trial, the court would have instructed the jury as to securities law and no witness, expert or otherwise, would have been permitted to testify as to the state of applicable securities law. The advice received from Seligman, as helpful as it may have been to counsel, is properly characterized as legal fee work. Lead Counsel will not be separately reimbursed for fees charged by Seligman.

Linda Allen, Ph.D., a professor of finance at Baruch College of the City University of New York, was plaintiffs' valuation expert regarding the NAV of the Van Kampen Prime Rate Income Trust. See Abrams v. Van Kampen Funds, Inc., 2005 WL 88973 *13-14 (N.D. Ill. Jan. 13, 2005) ("Abrams IV"). Certainly, most of Allen's work was as an expert and Lead Counsel is entitled to be reimbursed for fees paid for that work. However, Allen also devoted substantial hours to work she described in her bills as: "assist in the evaluation of compliance with discovery requests," "assist in preparation of supplemental discovery requests," "document search," "consultation and assistance during depositions," and "comply with document request." While some general consultation with an expert may be appropriate in order to know what documents to ask for and some questions to ask at depositions, Allen's bills indicate actual involvement in the discovery process itself. That is legal work. This type of work will not be separately reimbursed as an expert fee. Also, Allen used graduate assistants to perform clerical data entry work that apparently could have just as easily been performed by the paralegal or clerical staff of one of the law firms involved in this case. That type of work will not be separately reimbursed as an expert fee.

A second issue is the rates charged by the experts. Allen charged $375.00 per hour for most work and $625.00 per hour

for deposition testimony. Michael Barclay, Ph.D., a professor of finance at the Simon School of Business Administration at the University of Rochester, charged $450.00 per hour. He was plaintiffs' damages expert. See Abrams IV, 2005 WL 88973 at *9. Barclay's bills also include charges for other individuals at his firm. Their qualifications are not described in any of the submissions. Those persons charged rates of $75.00 to $350.00 per hour.

Lead Counsel provide no affidavit or other documentation supporting that these are the customary rates of these experts. Lead Counsel also provide nothing to show that these rates are rates ordinarily charged by these type of experts. Lead Counsel do point to the fact that defendants paid even higher rates to some of their experts. Defendant liability expert Michael McAdams of Four Corners Capital Management LLC, see id. at *5-8, charged $500.00 per hour if working in Los Angeles, $600.00 per hour to work elsewhere, and $700.00 per hour for deposition testimony. Defendants' damages experts, Daniel Fischel and David Ross of Lexecon Inc., see id. at *8-11, charged, respectively, $1000.00 and $505.00 per hour.

Factors to consider in determining a reasonable rate of compensation for an expert include: the witness's area of expertise; the education and training that was required to obtain the expertise; the prevailing rates of other respected available

experts; the nature, quality and complexity of the work performed; the fee actually charged by the expert on related matters; the cost of living in the pertinent geographic area; and any other factor likely to assist the court. Fait v. Hummel, 2002 WL 31433424 *4 (N.D. Ill. Oct. 30, 2002); Profile Products, LLC v. Soil Management Technologies, Inc., 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001); Royal Maccabees, 2001 WL 290308 at *16.

It is difficult to find directly comparable fees allowed in other cases. While no recent cases have been found involving fees for these same experts or for others with precisely the same speciality, it appears unusual to allow expert fees greater than $350.00 per hour. See, e.g., Fait, 2002 WL 31433424 ($425.00 per hour for deposition testimony of financial valuation expert); Profile Products, 155 F. Supp. 2d at 886-87 (forensic accountant requested $475.00 per hour and was allowed $250.00 per hour); Royal Maccabees, 2001 WL 290308 at *17 ($600.00 per hour requested for deposition testimony of psychiatrist and $250.00 per hour allowed); Frederick v. Columbia University, 212 F.R.D. 176, 177 (S.D.N.Y. 2003) (leading toxicologist sought $975.00 per hour for deposition testimony and $300.00 per hour for travel time; court allowed $375.00 per hour for deposition testimony and $200.00 per hour for travel time). In KeySpan, 2005 WL 3093399 at *19, a settled class action securities fraud case brought in New York, lead counsel sought reimbursement for accountant

experts that they had paid $400.00 and $475.00 per hour. The court indicated that those charges were likely excessive, but allowed reimbursement because lead counsel had actually incurred the expense and had been awarded only 20% of the class recovery as a fee.

Lead Counsel have not established that the requested reimbursements are based on customary and reasonable hourly rates. The reimbursements will be based on $350.00 per hour for all work of Allen and Barclay, including deposition testimony. The hourly rates for the associates that worked with Barclay will be reduced as well in a generally proportional manner as set forth below.

Lead Counsel will be reimbursed $159,228.55 based on the billings of Allen. This represents 322.5 hours of Allen at $350.00 per hour ($112,875.00), 67 assistant hours at $25.00 per hour ($1,675.00), and $45,710.13 in expenses for a total of $160,260.13. The total has been reduced by $1,031.58 that Lead Counsel inadvertently mislabeled and has already been included in another category of expense for which reimbursement was previously allowed. See Supp. Memo. at 7 n.2.

Lead Counsel will be reimbursed $101,666.84 based on the billings of Barclay's firm, Forensic Economics, Inc. That amount is calculated as follows (based on the hours and hourly rates shown in parentheses):

```
Barclay     (143.75 x $350)        $ 50,312.50
Mulcahey    (446.50 x $100)          44,650.00
Torchino    ( 48.75 x $250)          12,187.50
Laffey¹     (301.50 x $ 40)          12,060.00
Krenzer     ( 75.50 x $100)           7,550.00
Bedworth    ( 23.75 x $ 65)           1,543.75
Pansori     (  2.00 x $125)             250.00
Kotz        (  1.75 x $125)             218.75
Staff       (  4.00 x $ 25)             100.00
Expenses                                244.34
    Subtotal                      $129,116.84
    Prior Reimbursement²           -27,450.00
Total                             $101,666.84
```

Ronald Picur, Ph.D., was an accounting expert. He billed his time at $250.00 per hour and apparently also used assistants that he billed at lower rates. The $26,909.50 that is requested will be allowed.

Thomas Herzfeld, a specialist in closed-ended mutual funds, provided two hours of consulting work at $500.00 per hour. Since it is only two hours, the full amount of $1,000.00 will be allowed.

The total for experts is $288,804.89.

As to photocopying expenses, Lead Counsel submit bills from outside copying services that total $86,827.50. That amount

---

[1] Laffey's hours include amounts billed as Artisan Solutions.

[2] Lead Counsel represent that, pursuant to the court order dated September 27, 2004, they received a reimbursement from defendants. Although that order pertained to a reimbursement for sending revised notices necessitated by a prior error of defendants, Lead Counsel has made the adjustment to the costs associated with Barclay. See Supp. Memo. at 4-5.

will be allowed. As to in-house copying, Lead Counsel concede that they should be limited to the rates an outside copying service would charge. Abrams V, 2006 WL 163023 at *5. Lead Counsel contend in-house copying should be reimbursed at 13.92 cents per page, which is based on dividing the $86,827.50 by the 623,712 copies that amount includes. However, the $86,827.50 includes additional items besides the copying itself such as diskette reproduction, tabbing, binding, delivery charges, and sales tax. It also includes some color copying. There is no indication that the in-house copying is anything other than simple, black and white copying. A recent Seventh Circuit case affirms limiting a Philadelphia law firm to 6 or 7 cents per page for in-house copying. United States v. Emergency Medical Associates of Illinois, Inc., ___ F.3d ___, 2006 WL 229999 *4 (7th Cir. Feb. 1, 2006). Miller Faucher in Chicago paid 10 cents per page for outside copying. Labaton Sucharow in New York paid 12 cents per page for such copying. There are no outside copying bills from Lerach Coughlin (formerly Cauley Geller) in Boca Raton, Florida.[3] There are bills from its San Diego and Little Rock offices that vary from 10.5 to 16 cents per page.[4] In-house

---

[3]There are some bills from a Chicago copying service that sent the copies to Boca Raton, but the copying service apparently charged extra per page in lieu of any delivery charge.

[4]The 16 cents per page was for "heavy litigation" copying.

copying will be calculated based on 10 cents per page for Miller Faucher, 12 cents per page for Labaton Sucharow, and 11 cents per page for Lerach Coughlin.

The total reimbursement for copying will be $119,990.78. That is based on $86,827.50 for outside copying; $8,657.80 (86,578 x $0.10) for Miller Faucher copying; $18,089.40 (150,745 x $0.12) for Labaton Sucharow copying; and $6,416.08 (58,328 x $0.11) for Lerach Coughlin copying.

Lead Counsel request $102,074.10 for investigators and trial consultants. They now explain that these costs represent expenses for the mock jury trial, presentation expenses for the mediation, and some work by private investigators regarding the background of witnesses. Although the court has some doubt that an expenditure of this kind and amount should be charged, the requested amount will be allowed.

As to travel, transportation, and meal expenses, Lead Counsel have provided a listing of all trips, who traveled, and the work performed. This documentation is satisfactory. The $130,106.86 that is requested will be reimbursed.

As to expenses identified as legal and factual research, it was previously held that no separate reimbursement would be permitted for computer-assisted legal research. Abrams V, 2006 WL 163023 at *5. Lead Counsel identify $540.14 of this expense that does not represent research on Westlaw or Lexis.

Most of this cost represents financial research conducted through other electronic services. The $540.14 that is requested will be allowed. It is noted, though, that charges for accessing this court's electronic filing system (CM/ECF) might properly be categorized as unreimbursable firm overhead. However, the charge will be allowed because it is only $16.29.

Last to consider is the expense that had been labeled as court costs and service fees. See Abrams V, 2006 WL 163023 at *6. Lead Counsel now informs the court that a majority of the amount originally requested represented the costs of publishing notice of the suit as required by the PSLRA. Lead Counsel has withdrawn much of this requested amount because the notices published exceeded the requirements of the PSLRA. The portion that is requested for such notices will be allowed as will most of the other expenses. Most of the expenses are for serving the lawsuit on defendants and for service and other fees related to third-party depositions. $350.00 for pro hac vice fees will not be reimbursed. It is the attorney's choice as to where to seek admission and where to practice. For $100.00, the attorney could be permanently admitted to this court instead of paying $50.00 per case. A client should not be charged for the cost of the attorney being admitted to practice. Liquid Dynamics Corp. v. Vaughan Co., 2002 WL 31207212 *1 (N.D. Ill. Oct. 2, 2002); International Oil, Chemical & Atomic Workers, Local 7-517 v.

Uno-Ven Co., 1998 WL 895557 *4 (N.D. Ill. Dec. 14, 1998). But see Emergency Medical Associates, ___ F.3d at ___, 2006 WL 229999 at *4 (affirming, without discussion, the awarding of pro hac vice fees as a cost). $4,906.10 will be reimbursed for expenses labeled as court costs and service fees.

The additional reimbursements total $646,422.87. Added to the $1,459,619.30 previously awarded, the new total is $2,106,042.17. The Claims Administrator will be permitted to distribute up to this much in reimbursement, plus proportionate interest. This disbursement will reduce the net recovery on which the 25% fee award will be calculated.

IT IS THEREFORE ORDERED that Lead Counsel's Supplemental Memorandum in Support of Reimbursement [219] is construed as a motion for reconsideration. Lead Counsel's motion for reconsideration [219] is granted in part and denied in part. The Claims Administrator shall distribute from the Settlement Fund reimbursement of expenses totaling up to $2,106,042.17 plus proportionate interest.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: FEBRUARY 21, 2006